## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF MARYLAND

| | |
|---|---|
| Jill Sutton-Hall<br>200A Boxwood, Apt. 102<br>Annapolis, MD 21403<br>            Plaintiff,<br><br>v.<br><br><br>Eli Lilly & Company, Inc.<br>Lilly Corporate Center<br>740 South Alabama Street<br>Indianapolis, Indiana 46285 USA<br>        SERVE:  National Registered<br>        Agents, Inc. of Maryland<br>        Second Floor<br>        836 Park Avenue<br>        Baltimore, MD 21201<br>and<br><br>Xanodyne Pharmaceuticals, Inc.<br>        Serve:  President/CEO<br>        One Riverfront Place<br>        Newport, Kentucky  41071,<br>                Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)     Case No.:_____ |

## COMPLAINT

The Plaintiff, Jill Sutton-Hall, by and through Plaintiff's attorney, Paul Weykamp, upon information and belief, at all times hereinafter mentioned, alleges as follows:

## JURISDICTION

1.     This court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because the amount in controversy as to the Plaintiff exceeds $75,000.00, exclusive of interests and costs, and because Defendants, XANODYNE PHARMACEUTICALS, INC., and ELI LILLY & COMPANY, are incorporated and

have their principal places of business in states other than the state in which the named Plaintiff resides.

2.  This Court has supplemental jurisdiction over the remaining common law and state claims pursuant to 28 U.S.C. § 1367.

3.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events giving rise to Plaintiff's claims occurred, in part, in the State of Maryland.

## NATURE OF THE CASE

4.  This action is brought on behalf of Plaintiff, Jill Sutton-Hall, who was prescribed, purchased and correctly used Darvon/Darvocet, also known generically as Propoxyphene Napsylate and Acetaminophen.

5.  Defendants XANODYNE PHARMACEUTICALS, INC. and ELI LILLY & COMPANY (hereinafter referred to as "Defendants") designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed Darvon/Darvocet for use as a prescription pain management medication.

6.  Defendants concealed their knowledge of Darvon/Darvocet's defects from Plaintiff, the Food and Drug Administration (hereinafter referred to as "FDA"), the public in general and/or the medical community specifically.

7.  When warning of safety and risks of Darvon/Darvocet, Defendants negligently and/or fraudulently represented to the medical and healthcare community, the FDA, to Plaintiff and to the public in general, that Darvon/Darvocet had been tested and was found to be safe and/or effective for its indicated use.

8.    These representations were made by Defendants with the intent of defrauding and deceiving Plaintiff, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing Plaintiff, the public in general, and the medical community in particular, to recommend, dispense, and/or purchase Darvon/Darvocet for use as a prescription pain management medication, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff.

9.    Defendants negligently and improperly failed to perform sufficient tests, if any, concerning Darvon/Darvocet's potential to cause cardiotoxicity and, more specifically, potentially fatal cardiac arrhythmias, during clinical trials, forcing Plaintiff and Plaintiff's physicians, hospitals, and/or the FDA, to rely on safety information that applies to other prescription pain management medications, which does not entirely and/or necessarily apply to Darvon/Darvocet.

10.   As a result of the defective nature of Darvon/Darvocet, those persons who use and/or used and relied on Darvon/Darvocet have suffered and/or are at a greatly increased risk of serious and dangerous side effects including, *inter alia*, heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

11.   Plaintiff herein has sustained certain of the above health consequences due to Plaintiff's use of Darvon/Darvocet.

12. Defendants concealed their knowledge of the defects in their product from Plaintiff, Plaintiff's physicians, hospitals, pharmacists, the FDA, and the public in general.

13. Consequently, Plaintiff seeks compensatory damages as a result of Plaintiff's use of Darvon/Darvocet, which has caused, may cause, and/or will continue to cause Plaintiff to suffer and/or be at greatly increased risk of serious and dangerous side effects including, *inter alia*, heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

## PARTY PLAINTIFF

14. Plaintiff, Jill Sutton-Hall, is a natural person and is a resident of the State of Maryland.

15. Plaintiff was prescribed Darvon/Darvocet for pain management in or about February 2009..

16. Plaintiff's physician informed Plaintiff that, although there were some side effects described in the Darvon/ Darvon/Darvocet package literature, the risk was slight and was perfectly safe.

17. Plaintiff took the prescription for Darvon/Darvocet. Plaintiff received Darvon/Darvocet in Defendants' packaging. The package of Darvon/Darvocet was sealed and appeared to be in the same condition as it had been at the time it had left

Defendants' plant(s). Plaintiff is informed and believes, and on the basis of such information and belief alleges, that Defendants placed an informational leaflet, containing warnings of possible side effects, inside the packages of Darvon/Darvocet. However, the package purchased by Plaintiff had no such leaflet and the package itself contained no such warning.

18.  As a result of using Defendants' drug Darvon/Darvocet, Plaintiff was caused to suffer cardiovascular injuries and cardiac arrhythmias on or about October 2009.

19.  Plaintiff used Darvon/Darvocet in the manner in which it was prescribed at or about the time plaintiff suffered cardiovascular injuries and arrhythmias on or about October 2009.

20.  Plaintiff was treated for the Darvon- Darvon/Darvocet induced cardiac condition.

21.  Plaintiff was caused to sustain severe, permanent and life threatening personal injuries, pain, suffering, emotional distress, lifelong fear of premature death and the need for continued lifelong cardiac monitoring, treatment and medications.

22.  The injuries and damages sustained by Plaintiff were caused by Defendants' drug.

### PARTY DEFENDANT

23.  Upon information and belief, Defendant XANODYNE PHARMACEUTICALS, INC., was and is a corporation organized under the laws of the Commonwealth of Kentucky, with its principal place of business located in Kentucky.

24.   Upon information and belief, Defendant ELI LILLY & COMPANY, was and is a corporation organized under the laws of the state of Indiana, with its principal place of business located in Indiana.

25.   Upon information and belief, Defendants have transacted and conducted and continue to transact and conduct business in the State of Maryland and have derived and continue to derive substantial revenue from interstate commerce.

26.   Upon information and belief, Defendants expected or should have expected that their acts would have consequences within the United States of America, and Maryland, and within the confines of the United States District Court for the District of Maryland in particular and have derived and continue to derive substantial revenue from interstate commerce.

27.   Upon information and belief, Defendants were and are in the business of and did and do design, research, manufacture, test, advertise, promote, market, sell and distribute Darvon/Darvocet for use as a prescription management medication.

28.   Upon   information   and   belief,   Defendant   XANODYNE PHARMACEUTICALS, INC., is the holder of the approved New Drug Application for Darvon/Darvocet.

29.   Upon   information   and   belief,   Defendant   XANODYNE PHARMACEUTICALS, INC., obtained the rights to the approved New Drug Application for Darvon/Darvocet from AAIPHARMA SERVICES in or around May 2005.

30.    Upon information and belief, AAIPHARMA SERVICES, obtained the rights to the approved New Drug Application for  Darvon/Darvocet from Defendant ELI LILLY AND COMPANY in or around February 2002.

31.    Upon information and belief, Defendant ELI LILLY AND COMPANY was the original holder of the approved NDA application for  Darvon/Darvocet over 50 years ago and did design, research, manufacture, test, advertise, promote, market, sell, distribute, and/or have recently acquired the Defendant who have designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed  Darvon/Darvocet for use as a prescription pain management medication for over 40 years.

32.    Upon information and belief, Defendant ELI LILLY AND COMPANY continues to benefit from the sale of  Darvon/Darvocet and does so because it has continued to license its "know-how" and "trademarks to commercialize Darvon and Darvon/Darvocet and any other pharmaceutical product containing the active pharmaceutical ingredient Propoxyphene in the United States" to Defendant XANODYNE PHARMACEUTICALS, INC.

## FACTUAL BACKGROUND

33.    At all relevant times, Defendants were and remain in the business of and did design, research, manufacture, test, advertise, promote, market, sell, distribute and/or have recently acquired another business who had designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed  Darvon/Darvocet for use as a prescription pain management medication.

34.   At all relevant times, Defendants focused their sales on pain management products including Darvon/Darvocet because the area of pain management offers attractive commercial opportunities in significant markets in the United States (see http://www.Xanodyne.com/strategy.asp (as of December 16, 2010)).

35.   At all relevant times, Defendants affirmatively decided not to take part in full discovery research of their products because Defendants believed that it was more beneficial to advance products quickly through abbreviated developmental pathways in order to decrease the time and cost of bringing a new drug to market (see http://www.Xanodyne.com/strategy.asp (as of December 16, 2010)).

36.   At all relevant times, Defendants, by using a strategy of moving their products through the research and development process expeditiously, believed they could reach the goal of becoming a leading integrated specialty pharmaceutical company that develops and commercializes new products for significant markets in pain management (see http://www.Xanodyne.com/strategy.asp (as of December 16, 2010)).

37.   Approximately 10 million people in the United States received prescriptions for Darvon/Darvocet and other Propoxyphene related drugs in 2009 to the FDA.

38.   Upon information and belief, Adverse Event data maintained by the FDA indicates serious adverse events including, but not limited to, heart arrhythmias, atrial fibrillation, tachycardia, bradycardia, myocardial infarction, and/or sudden death.

39.   Defendants ignored the correlation between the use of Darvon/Darvocet and the increased risk of developing potentially fatal heart arrhythmias, despite scientific and medical evidence available to the contrary.

40.   In June 2009, the European Medicines Agency (EMEA) recommended that the marketing authorizations for Propoxyphene be withdrawn across the European Union for safety concerns.

41.   Despite being petitioned by public interest groups to investigate whether Darvon/Darvocet was linked to serious and potentially fatal heart arrhythmias, Defendant Xanodyne refused to do so until July 2009, when it was order by the FDA to conduct a safety study assessing unanswered questions about the effects of Darvon/Darvocet on the heart.

42.   Plaintiff experienced heart arrythmia, slowed heart rate, hypotension as a result of taking Darvon/Darvocet on or about October 2009.

43.   The results of the study ordered by the FDA indicated that, even when taken at recommended doses, Propoxyphene causes significant changes to the electrical activity of the heart.   These changes, which can be seen on an electrocardiogram (ECG), can increase the risk for serious abnormal heart rhythms that have been linked to serious adverse effects, including sudden death.

44.   On November 19, 2010, the FDA announced that Defendant Xanodyne had agreed to halt all U.S. marketing of Darvon/Darvocet after it was determined that the drug benefits were seriously outweighed by the risks associated with its use, specifically, the potential for the drug to cause serious and potentially fatal heart arrhythmias.

45.   The use of Darvon/Darvocet creates unique and dangerous risks compared to other prescription pain management medications.   These risks include, *inter alia*,

heart arrhythmias, myocardial infarction, and other adverse cardiovascular events, including sudden death.

46.   Defendants did not provide adequate warnings to patients, doctors, the health care community and the public in general about the increased risk of serious adverse events described herein.

47.   By reason of the foregoing, Plaintiff has developed and/or is at an extremely high risk of serious and dangerous side effects including, *inter alia*, heart arrhythmias, myocardial infarction, and other adverse cardiovascular events, including sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

48.   Plaintiff has endured and continues to suffer the mental anguish and psychological trauma of living with the knowledge that plaintiff has and/or may suffer serious and dangerous side effects including, *inter alia*, heart arrhythmias, myocardial infarction, and other adverse cardiovascular events, including sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring, and/or medications, and fear of developing any of the above named health consequences.

49.   By reason of the foregoing, Plaintiff has been severely and permanently injured, including the risk of premature death, and will require more medical

monitoring and treatment than prior to Plaintiff's use of Defendant's drug Darvon/Darvocet.

## FEDERAL REQUIREMENTS

50.   Defendants had an obligation to comply with the law in the manufacture, design, and sale of Darvon/Darvocet.

51.   Upon information and belief, Defendants violated the Federal Food, Drug and Cosmetic Act, 21 U.S.C. § 301, *et. seq.*

52.   Upon information and belief, Defendants, with respect to the prescription drug Darvon/Darvocet, have or may have failed to comply with all federal standards applicable to the sale of prescription drugs including, but not limited to, one or more of the following:

   a.   Darvon/Darvocet is adulterated pursuant to 21 U.S.C. § 351 because, *inter alia*, it fails to meet established performance standards and/or methods, facilities, or controls used for its manufacture, packing, storage or installation and is not in conformity with federal requirements.

   b.   Darvon/Darvocet is adulterated pursuant to 21 U.S.C. § 351 because, *inter alia*, its strength differs from or its quality or purity falls below the standard set forth in the official compendium for Darvon/Darvocet and such deviations are not plainly stated on its labels.

   c.   Darvon/Darvocet is misbranded pursuant to 21 U.S.C. §352 because, *inter alia*, its labeling is false or misleading.

d.   Darvon/Darvocet is misbranded pursuant to 21 U.S.C. § 352 because words, statements, or other information required by or under authority of chapter 21 U.S.C. § 352 are not prominently placed thereon with such conspicuousness and in such terms as to render it likely to be read and understood by the ordinary individual under customary conditions of purchase and use.

e.   Darvon/Darvocet is misbranded pursuant to 21 U.S.C. § 352 because the labeling does not bear adequate directions for use, and/or the labeling does not bear adequate warnings against use where its use may be dangerous to health or against unsafe dosage or methods or duration of administration or application, in such manner and form as are necessary for the protection of users.

f.   Darvon/Darvocet is misbranded pursuant to 21 U.S.C. § 352 because it is dangerous to health when used in the dosage or manner, or with the frequency or duration prescribed, recommended, or suggested in the labeling thereof.

g.   Darvon/Darvocet does not contain adequate direction for use pursuant to 21 CFR § 201.5 because of omission, in whole or in part, or incorrect specification of (a) statements of all conditions, purposes, or uses for which it is intended, including conditions, purposes, or uses for which it is prescribed, recommended or suggested in its oral, written, printed or graphic advertising, and conditions, purposes or uses for which the drug is commonly used; (b) the quantity of dosage,

including usual quantities for each of the uses for which it is intended and usual quantities for persons of different ages and different physical conditions; (c) frequency of administration or application; (d) duration or administration or application and/or (d) route or method of administration or application.

h.  Defendants violated 21 CFR § 201.56 because the labeling was not informative and accurate.

i.   Darvon/Darvocet is misbranded pursuant 21 CFR § 201.56 because the labeling was not updated as new information became available that caused the labeling to become inaccurate, false, or misleading.

j.  Defendants violated 21 CFR § 201.57 by failing to provide information that is important to the safe and effective use of the drug, including the potential of Darvon/Darvocet to cause and the need for regular and/or consistent cardiac monitoring to ensure that a potential fatal cardiac arrhythmia has not developed.

k.  Defendants violated 21 CFR § 201.57 by failing to identify specific tests needed for selection or monitoring of patients who took the prescription drug Darvon/Darvocet.

l.  Defendants violated 21 CFR § 201.57 because the safety considerations regarding Darvon/Darvocet are such that the drug should be reserved only for certain situations, and Defendants failed to state such information.

m. Darvon/Darvocet is mislabeled pursuant to 21 CFR § 201.57 because the labeling fails to describe serious adverse reactions and potential safety hazards, limitations in usage imposed by it, and steps that should be taken if they occur.

n. Darvon/Darvocet is mislabeled pursuant to 21 CFR § 201.57 because the labeling was not revised to include a warning as soon as there was reasonable evidence of an association of a serious hazard with the drug.

o. Defendants violated 21 CFR § 201.57 because the labeling failed to list the adverse reactions that occur with Darvon/Darvocet and other drugs in the same pharmacologically active and chemically related class.

p. Defendants violated 21 CFR § 201.57 because they failed to list the development of cardiac arrhythmias before the other adverse reactions on the labeling of Darvon/Darvocet, even though cardiac arrhythmia is significantly more severe than the other reactions listed in the adverse reactions section of the labeling.

q. Darvon/Darvocet is mislabeled pursuant to 21 CFR § 201.57 because the labeling does not state the recommended usual dose, the usual dosage range, and, if appropriate, an upper limit beyond which safety and effectiveness have not been established.

r. Defendants violated 21 CFR § 210.1 because the process by which Darvon/Darvocet was manufactured, processed, and/or held fails to

meet the minimum current good manufacturing practice of methods to be used in, and the facilities and controls to be used for, the manufacture, packing or holding of a drug to assure that it meets the requirements as to safety and has the identity and strength and meets the quality and purity characteristics that it purports or is represented to possess.

s.   Defendants violated 21 CFR § 210.122 because the labeling and packaging materials for Darvon/Darvocet do not meet the appropriate specifications.

t.   Defendants violated 21 CFR § 211.165 because the test methods employed by them for Darvon/Darvocet are not accurate, sensitive, specific, and/or reproducible and/or such accuracy, sensitivity, specificity and/or reproductibility of test methods have not been properly established and documented.

u.   Defendants violated 21 CFR § 211.165 in that they failed to meet established standards or specifications and/or any other relevant quality control criteria in regards to Darvon/Darvocet.

v.   Defendants violated 21 CFR § 211.198 because the written procedures for Darvon/Darvocet describing the handling of all written and oral complaints regarding the drug were not followed.

w.   Defendants violated 21 CFR § 310.303 in that Darvon/Darvocet is not safe and effective for its intended use.

x.  Defendants violated CFR § 310.303 because they failed to establish and maintain records and make reports related to clinical experience or other data or information necessary to make or facilitate a determination of whether there are or may be grounds for suspending or withdrawing approval of the application to the FDA.

y.  Defendants violated 21 CFR §§310.305 and 314.80 by failing to report adverse events associated with  Darvon/Darvocet as soon as possible or at least within 15 days of the initial receipt by Defendants of any adverse drug experience(s).

z.  Defendants violated 21 CFR § 310.305 and 314.80 by failing to conduct an investigation of each adverse event associated with Darvon/Darvocet and evaluating the cause of such adverse event.

aa. Defendants violated 21 CFR §§ 310.305 and 314.80 by failing to promptly investigate all serious, unexpected adverse drug experiences involving  Darvon/Darvocet and submit follow-up reports within the prescribed 15 calendar days of receipt of new information or as requested by the FDA.

bb. Defendants violated 21 CFR §§ 310.305 and 314.8 by failing to keep records of the unsuccessful steps taken to seek additional information regarding serious, unexpected adverse drug experiences involving Darvon/Darvocet.

cc. Defendants violated 21 CFR § 310.305 and 314.80 by failing to identify the reports involving  Darvon/Darvocet it submitted properly,

such as labeling them as "15-day Alert report" or "15-day Alert report follow-up."

dd. Defendants violated 21 CFR § 312.32 because they failed to review all information relevant to the safety of Darvon/Darvocet or otherwise received by Defendants from sources, foreign or domestic, including information derived from any clinical or epidemiological investigations, animal investigations, commercial marketing experience, reports in the scientific literature, and unpublished scientific papers, as well as reports from foreign regulatory authorities that had not already been previously reported to the agency by the sponsor.

ee. Defendants violated 21 CFR § 314.80 by failing to provide periodic reports to the FDA regarding Darovcet, such reports containing (a) a narrative summary and analysis of the information in the report and an analysis of the 15-day Alert reports submitted during the reporting interval, (b) an Adverse Reaction report for each adverse drug experience not already reported under the Post-marketing 15-day alert report, and/or (c) a history of actions taken since the last report because of adverse drug experiences (for example, labeling changes or studies initiated).

ff. Defendants violated 21 CFR § 314.80 by failing to submit a copy of published articles from scientific or medical journals along with one or

more 15-day alert reports based on information from scientific literature.

53.   Defendants failed to meet the standard of care set by the above statutes and regulations, which were intended for the benefit of individual consumers such as Plaintiff, making Defendants negligent *per se*.

### FIRST CAUSE OF ACTION
### AGAINST THE DEFENDANTS
### (NEGLIGENCE)

54.   Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs with the same force and effect as if more fully set forth herein.

55.   Defendants had a duty to exercise reasonable care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, sale and/or distribution of Darvon/Darvocet into the stream of commerce, including a duty to assure that the product would not cause users to suffer unreasonable, dangerous side effects.

56.   Defendants failed to exercise ordinary care in the designing, researching, manufacturing, marketing, supplying, promoting, packaging, testing, sale, quality assurance, quality control, and/or distribution of Darvon/Darvocet into interstate commerce in that Defendants knew or had reason to know that using Darvon/Darvocet created a high risk of unreasonable, dangerous side effects, including, *inter alia*, heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish,

including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

57.   The negligence of Defendants, their agents, servants, and/or employees, includes, but is not limited to, the following acts and/or omissions:

     a.   Manufacturing, producing, promoting, formulating, creating, and/or designing Darvon/Darvocet without thoroughly testing it;

     b.   Manufacturing, producing, promoting, formulating, creating, and/or designing Darvon/Darvocet without adequately testing it;

     c.   Not conducting sufficient testing programs to determine whether Darvon/Darvocet was safe for use, in that Defendants knew or had reason to know that Darvon/Darvocet was unsafe and unfit for use by reason of the dangers to its users;

     d.   Selling Darvon/Darvocet without making proper and sufficient tests to determine the dangers to its users;

     e.   Negligently failing to adequately and correctly warn Plaintiff, the public, the medical and healthcare professions, and the FDA of the dangers of Darvon/Darvocet;

     f.   Failing to provide adequate instructions regarding safety precautions to be observed by users, handlers, and persons who would reasonably and foreseeably come into contact with, and more particularly use, Darvon/Darvocet;

g. Failing to test  Darvon/Darvocet and/or failing to adequately, sufficiently and properly test  Darvon/Darvocet;

h. Negligently advertising and recommending the use of Darvon/Darvocet without sufficient knowledge as to its dangerous propensities;

i. Negligently representing that  Darvon/Darvocet was safe for use for its intended purpose, when, in fact, it was unsafe;

j. Negligently representing that  Darvon/Darvocet was as equivalently safe and efficient as other prescription pain management medications;

k. Negligently designing  Darvon/Darvocet in a manner which was dangerous to its users;

l. Negligently manufacturing  Darvon/Darvocet in a manner which was dangerous to its users;

m. Negligently producing  Darvon/Darvocet in a manner which was dangerous to its users;

n. Negligently assembling  Darvon/Darvocet in a manner which was dangerous to its users;

o. Concealing information concerning FDA warnings from Plaintiff in knowing that  Darvon/Darvocet was unsafe, dangerous, and/or non-conforming with FDA regulations;

p. Improperly concealing and/or misrepresenting information from Plaintiff, healthcare professionals, and/or the FDA, concerning the

severity of risks and dangers of Darvon/Darvocet compared to other prescription pain management medications.

58.   Defendants underreported, underestimated and downplayed the serious dangers of Darvon/Darvocet.

59.   Defendants negligently compared the safety risk and/or dangers of Darvon/Darvocet with other prescription pain management medications.

60.   Defendants were negligent in the designing, researching, supplying, manufacturing, promoting, packaging, distributing, testing, advertising, warning, marketing and sale of Darvon/Darvocet in that they:

    a.   Failed to use due care in designing and manufacturing Darvon/Darvocet so as to avoid the aforementioned risks to individuals when Darvon/Darvocet was used for prescription pain management;

    b.   Failed to accompany their product with proper and/or accurate warnings regarding all possible adverse side effects associated with the use of Darvon/Darvocet;

    c.   Failed to accompany their product with proper warnings regarding all possible adverse side effects concerning the failure and/or malfunction of Darvon/Darvocet;

    d.   Failed to accompany their product with accurate warnings regarding the risks of all possible adverse side effects concerning Darvon/Darvocet;

e.  Failed to warn Plaintiff of the severity and duration of such adverse effects, as the warnings given did not accurately reflect the symptoms or severity of the side effects;

f.  Failed to conduct adequate testing, including pre-clinical and clinical testing and post-marketing surveillance to determine the safety of Darvon/Darvocet;

g.  Failed to warn Plaintiff, prior to actively encouraging the sale of Darvon/Darvocet, either directly or indirectly, orally or in writing, about the need for more comprehensive, regular medical monitoring than usual to ensure early discovery of potentially serious side effects;

h.  Were otherwise careless and/or negligent.

61.  Despite the fact that Defendants knew or had reason to know that Darvon/Darvocet caused unreasonably dangerous side effects, Defendants continued to market, manufacture, distribute and/or sell  Darvon/Darvocet to consumers, including Plaintiff.

62.  Defendants knew or had reason to know that consumers such as Plaintiff would foreseeably suffer injury as a result of its failure to exercise ordinary care, as set forth above.

63.  Defendants' negligence was the proximate cause of Plaintiff's injuries, harm and economic loss which plaintiff suffered and/or will continue to suffer.

64.  As a result of the foregoing acts and omissions, Plaintiff was and/or still is caused to suffer and/or is at a greatly increased risk of serious and dangerous side effects including, *inter alia*, heart arrhythmias, myocardial infarction, other adverse

cardiovascular events and/or sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

65.   As a result of the foregoing acts and omissions Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses.  Plaintiff is informed and believes and further alleges that plaintiff will in the future be required to obtain further medical and/or hospital care, attention and services.

66.   By reason of the foregoing, Plaintiff has been damaged by Defendants in the sum of $2,000,000.00.

### SECOND CAUSE OF ACTION
### AGAINST THE DEFENDANTS
### (STRICT PRODUCTS LIABILITY)

63.   Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

64.   At all times herein mentioned, Defendants designed, researched, manufactured, tested and advertised, promoted, marketed, sold, distributed Darvon/Darvocet as hereinabove described that was used by Plaintiff.

65.   Darvon/Darvocet was expected to and did reach the usual consumers, handlers, and persons coming into contact with said product without substantial

change in the condition in which it was produced, manufactured, sold, distributed, and marketed by Defendant.

66.   At those times,   Darvon/Darvocet was in an unsafe, defective, and inherently dangerous condition, which was dangerous to users, and in particular, to Plaintiff.

67.   The prescription pain management medication, Darvon/Darvocet, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants, was defective in design or formulation in that, when it left the hands of the manufacturer and/or suppliers, the foreseeable risks exceeded the benefits associated with the design or formulation of Darvon/Darvocet.

68.   The prescription pain management medication, Darvon/Darvocet, designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed by defendant was defective in design and/or formulation, in that, when it left the hands of the Defendant manufacturers and/or suppliers, it was unreasonably dangerous, and it was more dangerous than an ordinary consumer would expect.

69.   At all times herein mentioned,   Darvon/Darvocet was in a defective condition and unsafe, and Defendants knew or had reason to know that said product was defective and unsafe, especially when used in the form and manner as provided by Defendants.

70.   Defendants knew, or had reason to know, that all times herein mentioned Darvon/Darvocet was in a defective condition, and is inherently dangerous and unsafe.

71.   At the time of Plaintiff's use of Darvon/Darvocet, Darvon/Darvocet was being used for the purposes and in a manner normally intended, namely for pain management.

72.   Defendants, with this knowledge, voluntarily designed Darvon/Darvocet in a dangerous condition for use by the public, and in particular, by Plaintiff.

73.   Defendants had a duty to create a product that was not unreasonably dangerous for its normal, intended use.

74.   Defendants created a product unreasonably dangerous for its normal, intended use.

75.   The prescription pain management medication, Darvon/Darvocet, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was manufactured defectively in that Darvon/Darvocet left the hands of Defendants in a defective condition and was unreasonably dangerous to its intended users.

76.   The prescription pain management medication, Darvon/Darvocet, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants reached it intended users in the same defective and unreasonably dangerous condition which Defendants' drug Darvon/Darvocet was manufactured.

77.   Defendants designed, researched, manufactured, tested, advertised, promoted, marketed, sold, and distributed a defective product which created an unreasonable risk to the health of consumers and, in particular, to Plaintiff, and Defendants are therefore strictly liable for the injuries sustained by Plaintiff.

78.  Plaintiff could not, by the exercise of reasonable care, have discovered Darvon/Darvocet's defects herein mentioned and perceived its dangers.

79.  The prescription pain management medication, Darvon/Darvocet, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective due to inadequate warnings or instructions as Defendants knew or had reason to know that the product created a risk of serious and dangerous side effects including, *inter alia*, hear arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for life long medical treatment, monitoring and/or medications, and fear of developing ant of the above named health consequences and the defendant failed to adequately warn of said risks.

80.  The prescription pain management medication, Darvon/Darvocet, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective due to inadequate warnings and/or inadequate testing.

81.  The prescription pain management medication, Darvon/Darvocet, designed, researched, manufactured, tested, advertised, promoted, marketed, sold and distributed by Defendants was defective due to inadequate post-marketing surveillance and/or warnings because, after Defendants knew or had reason to know of the risks of serious side effects including, *inter alia*, heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, as well as other

severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring, and/or medications, and fear of developing any of the above named health consequences, and they failed to provide adequate warnings to users or consumers of the product, and continued to improperly advertise mark and/or promote their product, Darvon/Darvocet.

82.   By reason of the foregoing, Defendants became strictly liable in tort to Plaintiff for the manufacturing marketing, promoting, distribution, and selling of a defective product, Darvon/Darvocet.

83.   Defendants' defective design, manufacturing defect, and inadequate warnings of Darvon/Darvocet were acts that amount to willful, wanton, and/or reckless conduct by Defendants.

84.   Said defects in Defendants 'drug Darvon/Darvocet were a substantial factor in causing Plaintiff's injuries.

85.   As a result of the foregoing acts and omissions, Plaintiff was and still is caused to suffer, and/or is at a greatly increased risk of serious and dangerous side effects including, *inter alia*, heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, as well as other severe personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring, and/or medications, and fear of developing any of the above named health consequences.

86.   As a result of the foregoing acts and omissions Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

87.   By reason of the foregoing, Plaintiff has been damaged as against Defendants in the Sum of $2,000,000.00.

### THIRD CAUSE OF ACTION
### AGAINST THE DEFENDANT ELI LILLY & COMPANY
### (ENTERPRISE LIABILITY)

88.   Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

89.   Defendant Eli Lilly & Company (hereinafter "Eli Lilly") exerted control over Defendant Xanodyne in that it granted Xanodyne an exclusive license to utilize Eli Lilly's know-how and paraboloidal and pulvule capsule trademarks to commercialize Darvon,  Darvon/Darvocet, and other pharmaceutical products containing Propoxyphene.

90.   Defendant Eli Lilly exerted control over Defendant Xanodyne in that it required Xanodyne to pay Eli Lilly royalties based on the net sales of all forms of Darvon and  Darvon/Darvocet, and any new pharmaceutical products containing Propoxyphene.

91.   Defendant Eli Lilly exerted control over Defendant Xanodyne in that it required Xanodyne to use commercially reasonable efforts to develop at least two

new products for sale in the United States within three years of initiating development of any new product with Propoxyphene in it.

92.   Defendant Eli Lilly exerted control over Defendant Xanodyne in that it retained the right to suspend Xanodyne's license to use Eli Lilly's know-how and trademarks with respect to a particular product if and for so long as Xanodyne failed to pay any applicable royalties.

93.   Defendant Eli Lilly allowed Propoxyphene to enter the stream of commerce by licensing its trademarks of Darvon and  Darvon/Darvocet and its know-how to Defendant Xanodyne Pharmaceuticals.

94.   Defendant Eli Lilly knew or had reason to know that it was in a better position than Plaintiff, Plaintiff's physicians, healthcare providers, and/or the general public to bear the risk of loss from its products.

95.   Defendant Eli Lilly knew or had reason to know that it was in a better position than Plaintiff, Plaintiff's physicians, healthcare providers, and/or the general public to prevent the injuries Plaintiff suffered from occurring.

96.   By virtue of the control exerted by Defendant Eli Lilly, and the sales of the licensed products by Defendant Xanodyne, Plaintiff was and still is caused to suffer and/or is at a greatly increased risk of serious and dangerous side effects including, *inter alia*, heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, as well as other severe personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment,

monitoring, and/or medications, and fear of developing any of the above named health consequences.

97.   By reason of the foregoing, Plaintiff has been severely and permanently injured, including the potential of premature death, and will require more medical monitoring and treatment than prior to Plaintiff's use of Defendants' drug Darvon/Darvocet.

98.   As a result of the foregoing acts, Plaintiff requires and/or will require more health care and service and did incur medical, health, incident, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be require to obtain further medical and/or hospital care, attention, and services.

99.   By reason of the foregoing, Plaintiff has been damaged as against Defendant Eli Lilly & Company in the sum of $2,000,000.00.

## FOURTH CAUSE OF ACTION
## AGAINST THE DEFENDANTS
## (BREACH OF EXPRESS WARRANTY)

100.  Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

101.  Defendants expressly warranted that  Darvon/Darvocet was safe and well accepted by users.

102.  The prescription pain management medication  Darvon/Darvocet does not conform to these express representations because  Darvon/Darvocet is not safe and has numerous serious side effects, many which were not accurately warned about by

Defendants. As a direct and proximate result of the breach of said warranties, Plaintiff suffered and/or will continue to suffer severe and permanent personal injuries, harm, and economic loss.

103. Plaintiff did rely on the express warranties of the Defendants herein.

104. Members of the medical community, including physicians and other healthcare professionals, relied upon the representations and warranties of Defendants for use of Darvon/Darvocet as prescription pain medication in recommending, prescribing, and/or dispensing Darvon/Darvocet.

105. Defendants herein breached the aforesaid express warranties, as their drug Darvon/Darvocet was defective.

106. Defendants expressly represented to Plaintiff, Plaintiff's physicians, healthcare providers, and/or the FDA that Darvon/Darvocet was safe and fit for use for the purposes intended, that it was of merchantable quality, that it did not produce any dangerous side effects in excess of those risks associated with other prescription pain management medications, that the side effects it did produce were accurately reflected in the warnings, and that it was adequately tested and fit for its intended use.

107. Defendants knew or had reason to know that, in fact, said representations and warranties were false, misleading and untrue in that Darvon/Darvocet was not safe and fit for the use intended, and in fact produced serious injuries to the users that were not accurately identified and represented by Defendants.

108. As a result of the foregoing acts and/or omissions Plaintiff was and still is caused to suffer and/or is at a greatly increased risk of serious and dangerous side effects including, *inter alia*, heart arrhythmias, myocardial infarction, other adverse

cardiovascular events and/or sudden death, as well as other severe personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring, and/or medications, and fear of developing any of the above named health consequences.

109. By reason of the foregoing, Plaintiff has been severely and permanently injured, including the potential of premature death, and will require more medical monitoring and treatment than prior to Plaintiff's use of Defendants' drug Darvon/Darvocet.

110. As a result of the foregoing acts and omissions the Plaintiff requires and/or will require more health care and service and did incur medical, health, incident, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be require to obtain further medical and/or hospital care, attention, and services.

111. By reason of the foregoing Plaintiff has been damaged as against the Defendants in the sum of $2,000,000.00.

### FIFTH CAUSE OF ACTION
### AGAINST THE DEFENDANTS
### (BREACH OF IMPLIED WARRANTIES)

112.     Plaintiff repeats, reiterates and re-alleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

113.     At all times herein mentioned, the Defendants manufactured, compounded portrayed, distributed, recommended, merchandized, advertised,

promoted and sold  Darvon/Darvocet and/or have recently acquired the company who manufactured, compounded, portrayed, distributed, recommended, merchandized, advertised, promoted and sold  Darvon/Darvocet, for use a prescription pain management medication.

114.    At   the   time   Defendants   marketed,   sold,   and   distributed Darvon/Darvocet for the use by the Plaintiff, Defendants knew of the use for which Darvon/Darvocet was intended and impliedly warranted the product to be of merchantable quality and safe and fit for such use.

115.    Defendants impliedly represented and warranted to the users of Darvon/Darvocet and their physicians, healthcare providers, and/or the FDA that Darvon/Darvocet was safe and of merchantable quality and fit for the ordinary purpose for which said product was used.

116.    Said representations and warranties aforementioned were false, misleading and inaccurate in that  Darvon/Darvocet was unsafe, unreasonably dangerous, improper, not of merchantable quality, and defective

117.    Plaintiff and/or members of the medical community and/or healthcare professionals did rely on said implied warranty of merchantability of fitness for a particular use and purpose.

118.    Plaintiff and Plaintiff's physicians and healthcare professional relied upon the skill and judgment of Defendants as to whether  Darvon/Darvocet was of merchantable quality and safe and fit for its intended use.

119.    The prescription pain management medication  Darvon/Darvocet was placed into the stream of commerce by Defendants in a defective, unsafe and

inherently dangerous condition and the product and accompanying materials were expected to and did reach users, handlers, and persons coming into contact with said products without substantial change in the condition in which they were sold.

120.     Defendants herein breached and aforesaid implied warranties, as their drug  Darvon/Darvocet was not fit for its intended purposes and uses.

121.     As a result of the foregoing acts and omissions, Plaintiff was and/or still is caused to suffer and/or is greatly increased risk of serious or dangerous side effects including, *inter alia*, heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, as well as other severe personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring, and/or medications, and fear of developing any of the above named health consequences.

122.     As a result of the foregoing acts and omissions Plaintiff requires and/or will require more health care and service and did incur medical, health, incident, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be require to obtain further medical and/or hospital care, attention, and services.

123.     By reason of the foregoing Plaintiff has been damaged as against the Defendants in the sum of $2,000,000.00.

### SIXTH CAUSE OF ACTION
### AGAINST THE DEFENDANTS
### (FRAUDULENT MISREPRESENTATION)

124.  Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

125.  Defendants falsely and fraudulently represented to the medical and healthcare community, and to Plaintiff, and/or the FDA, and the public in general, that said product, Darvon/Darvocet, had been tested and was found to be safe and/or effective for prescription pain management.

126.  The representations made by Defendants were, in fact, false.

127.  When said representations were made by Defendants, Defendants knew or had reason to know those representations to be false, and it willfully, wantonly, and recklessly disregarded whether the representations were true.

128.  These representations were made by Defendants with the intent of defrauding and deceiving Plaintiff, the public in general, and the medical and healthcare community in particular, and were made with the intent of inducing the public in general and the medical healthcare community in particular, to recommend, prescribe, dispense and/or purchase said product, Darvon/Darvocet, for use as a means of prescription pain management, all of which evinced a callous, reckless, willful, depraved indifference to the health, safety and welfare of Plaintiff herein.

129.  At the time the aforesaid representations were made by Defendants and, at the time Plaintiff used Darvon/Darvocet, Plaintiff was unaware of the falsity of said representations and reasonably believed them to be true.

130.  In reliance upon said representations, Plaintiff was induced to and did use Darvon/Darvocet, thereby sustaining severe and permanent personal injuries and

being at an increased risk of sustaining severe and permanent personal injuries, and being at increased risk of premature death.

131. Defendants knew and were aware or had reason to be aware that Darvon/Darvocet had not been sufficiently tested, was defective in nature, and/or it lacked adequate and/or sufficient warnings.

132. Defendants knew or had reason to know that Darvon/Darvocet had a potential to, could, and would cause severe and grievous injury to the users of said product, and that it was inherently dangerous in a manner that exceeded any purported, inaccurate, and/or down-played warnings.

133. Defendants brought Darvon/Darvocet to the market, and acted fraudulently, wantonly and maliciously to the detriment of Plaintiff.

134. As a result of the foregoing acts and omissions, Plaintiff was and/or still is caused to suffer and/or is greatly increased risk of serious or dangerous side effects including, *inter alia*, heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, as well as other severe personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring, and/or medications, and fear of developing any of the above named health consequences.

135. As a result of the foregoing acts and omissions Plaintiff requires and/or will require more health care and service and did incur medical, health, incident, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff

will in the future be require to obtain further medical and/or hospital care, attention, and services.

136. By reason of the foregoing Plaintiff has been damaged as against the Defendants in the sum of $2,000,000.00.

## SEVENTH CAUSE OF ACTION
## AGAINST THE DEFENDANTS
## (FRAUDULENT CONCEALMENT)

137. Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

138. At all times during the course of dealing between Defendants and Plaintiff, and/or Plaintiff's health providers, and/or the FDA, Defendants misrepresented the safety of Darvon/Darvocet for its intended use.

139. At all times during the course of dealing between Defendants and Plaintiff, and/or Plaintiff healthcare providers, and/or the FDA, Defendants misrepresented the risk of cardiotoxicity caused by Darvon/Darvocet.

140. Defendants knew or were reckless in not knowing that their representations were false.

141. In representations to Plaintiff and/or Plaintiff's healthcare providers, and/or the FDA, Defendants fraudulently concealed and intentional omitted the following material information:

    a. That Darvon/Darvocet was not as safe as other forms of pain management;

b.  That the risks of adverse events with Darvon/Darvocet were higher than those with other prescription pain management medications;

c.  That the risks of adverse events with Darvon/Darvocet were not adequately tested and/or known by Defendants;

d.  That Defendants were aware of dangers in Darvon/Darvocet, in addition to and above and beyond those associated with other prescription pain management medications.

e.  That Darvon/Darvocet was defective, and that it caused dangerous side effects, including but not limited to higher incidences of heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, in a much more and significant rate than other prescription pain management medications;

f.  That patients needed to be monitored more regularly than normal while using Darvon/Darvocet;

g.  That Darvon/Darvocet was manufactured negligently;

h.  That Darvon/Darvocet was manufacture defectively;

i.  That Darvon/Darvocet was manufactured improperly;

j.  That Darvon/Darvocet was designed negligently;

k.  That Darvon/Darvocet was designed defectively;

l.  That Darvon/Darvocet was designed improperly;

142. Defendants were under a duty to disclose to Plaintiff, Plaintiff's physicians, hospitals, healthcare providers, and/or the FDA the defective nature of Darvon/Darvocet, including but not limited to the heightened risks of an adverse

cardiovascular event, such as heart arrhythmias, myocardial infarction and/or sudden death.

143. Defendants had sole access to material facts concerning the defective nature of the product and its propensity to cause serious and dangerous side effects, and hence, cause damage to persons who used Darvon/Darvocet, including Plaintiff, in particular.

144. Defendants' concealment and omissions of material facts concerning, *inter alia*, the safety of Darvon/Darvocet was made purposely, willfully, wantonly, and/or recklessly to mislead Plaintiff and Plaintiff's physicians, hospitals, and healthcare providers in reliance and continued use of Darvon/Darvocet, and actions thereon, and caused them to purchase, prescribe, and/or dispense Darvon/Darvocet and/or use the product.

145. Defendants knew that Plaintiff, Plaintiff's physicians, hospitals, healthcare providers and/or the FDA had no way to determine the truth behind Defendants' concealment and omissions, and that these included material omissions of facts surrounding Darvon/Darvocet, as set forth herein.

146. Plaintiff, as well as Plaintiff's doctors, healthcare providers, and/or hospitals reasonably relied on facts revealed which negligently, fraudulently and/or purposefully did not include facts that were concealed and/or omitted by Defendants.

147. As a result of the foregoing acts and omissions, Plaintiff was and/or still is caused to suffer and/or is greatly increased risk of serious or dangerous side effects including, *inter alia*, heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, as well as other severe personal injuries

which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring, and/or medications, and fear of developing any of the above named health consequences.

148. As a result of the foregoing acts and omissions Plaintiff requires and/or will require more health care and service and did incur medical, health, incident, and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be require to obtain further medical and/or hospital care, attention, and services.

149. By reason of the foregoing Plaintiff has been damaged as against the Defendants in the sum of $2,000,000.00.

## EIGHTH CAUSE OF ACTION
## AGAINST THE DEFENDANTS
## (NEGLIGENT MISREPRESENTATION)

150. Plaintiff repeats, reiterates, and realleges each and every allegation of this complaint contained in each of the foregoing paragraphs inclusive, with the same force and effect as if more fully set forth herein.

151. Defendants had a duty to represent to the medical and healthcare community and to Plaintiff, the FDA and the public in general that said product, Darvon/Darvocet, had been tested and found to be safe and effective for prescription in management.

152. The representations made by Defendants were, in fact, false.

153. Defendants failed to exercise ordinary care in the representation of Darvon/Darvocet, while involved in its manufacture, sale, testing, quality assurance,

quality control, and/or distribution of said product into interstate commerce in that Defendants negligently misrepresented Darvon/Darvocet's high risk of unreasonable, dangerous side effects.

154. Defendants breached their duty representing Darvon/Darvocet's serious side effects to the medical and healthcare community, to Plaintiff, the FDA and the public in general.

155. As a result of the negligent misinterpretations of Defendants set forth herein, Defendants knew and were aware or had reason to be aware that Darvon/Darvocet had been insufficiently tested, and/or had not been tested, that it lacked adequate and/or accurate warnings, and/or that it created a high risk and/or higher than acceptable risk, and/or higher than reported/represented risks, as well as unreasonable, dangerous side effects, including, *inter alia*, heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

156. As a result of the foregoing acts and omissions Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and related expenses. Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

157. By reason of foregoing, Plaintiff has been damaged as against the Defendants in the sum of $2,000,000.00.

## NINTH CAUSE OF ACTION
## AGAINST THE DEFENDANTS
## (FRAUD AND DECEIT)

158. Plaintiff repeats, reiterates and realleges each and every allegation of this Complaint contained in each of the foregoing paragraphs inclusive, with the same force and effects as if more fully set forth herein.

159. Defendants conducted research and/or had a duty to conduct research using Darvon/Darvocet as part of its research.

160. As a result of Defendants' research and testing, or lack thereof, Defendants blatantly and intentionally distributed false information, including but not limited to assuring the public, Plaintiff, Plaintiff's doctors, hospitals, healthcare professionals, and/or the FDA that  Darvon/Darvocet was safe and effective for use as a means of pain management.

161. As a result of Defendants' research and testing, or lack thereof, Defendants intentionally omitted certain results of testing and research to Plaintiff, the public, healthcare professionals, and/or the FDA.

162. Defendants had a duty when disseminating information to the public to disseminate truthful information and a parallel duty not to deceive Plaintiff, the public, as well as their respective healthcare providers and/or the FDA.

163. The information distributed to Plaintiff, the public, the FDA, by Defendants, including but not limited to reports, press releases, advertising campaigns, television

commercials, print ads, magazine ads, billboards, and/or all other commercial media contained material representations of fact and/or omissions.

164. The information distributed to Plaintiff, the public, and/or the FDA by Defendants intentionally included representations that Defendants' drug Darvon/Darvocet was safe and effective for use as a prescription pain management medication.

165. The information distributed to Plaintiff, the public, and/or the FDA by Defendants intentionally included representations that Defendants' drug Darvon/Darvocet caused the same risks, hazards, and/or dangers as other prescription pain management medications.

166. The information distributed to Plaintiff, the public, and/or the FDA by Defendants intentionally included representations that  Darvon/Darvocet was more effective for pain management, thereby encouraging the use of  Darvon/Darvocet in circumstances other than those in which the drugs has been approved, over-promises the benefits and minimizes the risk associated with  Darvon/Darvocet.

167. The information distributed to Plaintiff, the public, and/or the FDA by Defendants intentionally included false representations that  Darvon/Darvocet was not injurious to the health and/or safety of its intended users.

168. The information distributed to Plaintiff, the public, and/or the FDA by Defendants intentionally included false representations that  Darvon/Darvocet was as potentially injurious to the health and/or safety of its intended as other prescription pain management medications.

169. These representations were all false and misleading.

170. Upon information and belief, Defendants intentionally suppressed, ignored and disregarded test results not favorable to Defendants, and results that demonstrated that Darvon/Darvocet was not safe as a means of pain management and/or was not as safe as other means of pain management, including but not limited to other forms of prescription pain management medications.

171. Defendants intentionally made material representations to Plaintiff, the public, including the medical profession, and/or the FDA regarding the safety of Darvon/Darvocet, specifically but not limited to  Darvon/Darvocet not having dangerous and serious health and/or safety concerns.

172. Defendants intentionally made material representations to Plaintiff, the public, including the medical profession, and/or the FDA regarding the safety of Darvon/Darvocet, specifically but not limited to  Darvon/Darvocet being as safe a means of in management as other prescription pain management medications.

173. That is and was the purpose of Defendants in making these representations to deceive and defraud Plaintiff, the public, and/or the FDA, to gain the confidence of Plaintiff, the public, healthcare professionals, and/or the FDA, to falsely ensure the quality and fitness for use of Darvon/Darvocet and induce Plaintiff and/or the public to purchase, request, dispense, prescribe, recommend, and/or continue to use Darvon/Darvocet.

174. Defendants made the aforementioned false claims and false representations with the intent of convincing the public, healthcare professionals, the FDA, and/or the Plaintiff that  Darvon/Darvocet was fit and safe for use as a prescription pain management medication.

175. Defendants made the aforementioned false claims and false representations with the intent of convincing Plaintiff, the public, healthcare professionals, and/or the FDA that Darvon/Darvocet was fit and safe for use as pain management and did not pose risks, dangers, or hazards above and beyond those identified and/or associated with other prescription pain management medications.

176. Defendants made claims and representations in their documents submitted to Plaintiff, the public, healthcare professionals, and/or the FDA that Darvon/Darvocet did not present serious health and/or safety risks.

177. Defendants made claims and representations in their documents submitted to Plaintiff, the public, healthcare professionals, and/or the FDA that Darvon/Darvocet did not present health and/or safety risks greater than other prescriptions pain management medications.

178. These representations and others by Defendants were false when made, and/or were made with pretense of actual knowledge when knowledge did not actually exist, and/or were made recklessly and without regard to the actual facts.

179. These representations and others, made by Defendants, were made with the intention of deceiving and defrauding Plaintiff, the public, healthcare professionals, and/or the FDA, and were made in order to induce Plaintiff and/or Plaintiff's healthcare professionals to rely upon misrepresentations and cause Plaintiff to purchase, use, rely on, request, dispense, recommend, and/or prescribe Darvon/Darvocet.

180. Defendants recklessly and intentionally falsely represented the dangerous and serious health and/or safety concerns of Darvon/Darvocet to the public at large,

and Plaintiff in particular, for the purpose of influencing the marketing of a product known to be dangerous and defective and/or not as safe as other alternatives, including other prescription pain management medications.

181.  Defendants willfully and intentionally failed to disclose the material facts regarding the dangerous and serious safety concerns of  Darvon/Darvocet by concealing and suppressing material facts regarding the dangerous and serious health and/or safety concerns of  Darvon/Darvocet.

182.  Defendants willfully and intentionally failed to disclose the truth, failed to disclose material facts, and made false representations with the purpose and design of deceiving and lulling Plaintiff and/or Plaintiff's healthcare professionals into a sense of security so that Plaintiff would rely on the representations and purchase, use and rely on  Darvon/Darvocet and/or that Plaintiff's healthcare providers would dispense, prescribe, and/or recommend the same.

183.  Defendants, through their public relations efforts, which included but were not limited to the public statements and press releases, knew or had reason to know that the public, including Plaintiff, as well as Plaintiff's healthcare professionals would rely upon the information being disseminated.

184.  Defendants utilized direct-to-consumer adverting to market, promote, and/or advertise  Darvon/Darvocet.

185.  Plaintiff and/or Plaintiff's respective healthcare professionals did in fact rely on and believe Defendants' representations to be true at the time they were made and relied upon the representations as well as its superior knowledge of pain management

and were thereby induced to purchase, use and rely on Defendants' drug Darvon/Darvocet.

186. At the time the representations were made, Plaintiff and/or Plaintiff's healthcare providers did not know the truth with regard to the dangerous and serious health and/or safety concerns of Darvon/Darvocet.

187. Plaintiff did not discover the true facts with respect to the dangerous and serious health and/or safety concerns and the false representation of Defendants, nor could Plaintiff with reasonable diligence have discovered the true facts.

188. Had Plaintiff known the true facts with respect to the dangerous and serious health and/or safety concerns of  Darvon/Darvocet, Plaintiff would not have purchased, used and/or relied on Defendants' drug  Darvon/Darvocet.

189. Defendants' aforementioned conduct constitutes fraud and deceit, and was committed and/or perpetrated willfully, wantonly and/or purposefully on Plaintiff.

190. As a result of the foregoing acts and omissions Plaintiff was and is caused to suffer and/or is at a greatly increased risk of serious and dangerous side effects inducing, *inter alia*, heart arrhythmias, myocardial infarction, other adverse cardiovascular events and/or sudden death, as well as other severe and personal injuries which are permanent and lasting in nature, physical pain and mental anguish, including diminished enjoyment of life, as well as the need for lifelong medical treatment, monitoring and/or medications, and fear of developing any of the above named health consequences.

191. As a result of the forgoing acts and omissions Plaintiff requires and/or will require more health care and services and did incur medical, health, incidental and

related expenses.  Plaintiff is informed and believes and further alleges that Plaintiff will in the future be required to obtain further medical and/or hospital care, attention, and services.

192. By reason of the foregoing, Plaintiff has been damaged as against Defendants in the sum of $2,000,000.00.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands Judgment against Defendants on each of the above referenced claims and Cause of Action and as follows:

1.     Awarding compensatory damages to Plaintiff for past and future damages including but not limited to pain and suffering for severe and permanent personal injuries sustained by Plaintiff, health care costs, medical monitoring, together with interest and costs as provided by law;

2.     Punitive and/or exemplary damages for the wanton, willful, fraudulent, reckless acts of Defendants who demonstrated a complete disregard and reckless indifference for the safety and welfare of the general public and to Plaintiff in amount sufficient to punish Defendants and deter future similar conduct;

3.     Awarding Plaintiff reasonable attorneys fees;

4.     Awarding Plaintiff the costs of these proceedings; and

5.     Such other and further relief as this Court deems just and proper.

Respectfully Submitted,

Paul A. Weykamp
Law Office of Paul Weykamp
Counsel for Plaintiff
16 Stenersen Lane,  Suite 2
Hunt Valley, MD  21030
Telephone: (410) 584-0660

## PRAYER FOR TRIAL BY JURY

Plaintiff respectfully prays a jury trial on all issues presented herein.

Respectfully Submitted,

Paul A. Weykamp
Law Office of Paul Weykamp
Counsel for Plaintiff
16 Stenersen Lane,  Suite 2
Hunt Valley, MD  21030
Telephone: (410) 584-0660